has run against instituting the proceeding is no bar to granting such an amendment. In re Bingham, 127 N. Y. 296, 27 N. E. 1055. Where jurisdiction of the particular proceeding exists, the authority to amend exists, and such rule is applicable to special proceedings. People v. Board of Assessors, 10 App. Div. 393, 41 N. Y. Supp. 769. The order granting the amendment was proper. It should therefore be affirmed.

Order of surrogate's court of Kings county affirmed, with $10 costs and disbursements. All concur.

(47 App. Div. 560.)

### In re TURRELL'S WILL.

(Supreme Court, Appellate Division, First Department. February 9, 1900.)

1. WILLS—ATTESTATION CLAUSE.

It being required by 2 Rev. St. (Banks & Bros.' 9th Ed.) p. 1877, that the subscription to a will shall be made in the presence of the witnesses. or shall be acknowledged by the testator to have been so made to each of them, the subscription not being in their presence, the attestation clause should recite that testator made to witnesses the acknowledgment as to his subscription.

2. SAME—ACKNOWLEDGMENT.

Where the testatrix of a holographic will, having signed it, called in persons to witness a "document," and folded it so as to conceal the contents, leaving nothing visible except her signature and the imperfect attestation clause, which did not recite that her subscription was in their presence, or that she had made acknowledgment to them as to her subscription, and, putting her fingers on this clause, merely directed them to sign underneath it, and, while one of them observed the words "will and testament" therein, the other did not observe even this, there is not sufficient acknowledgment of the signature or publication of the will, though the witnesses inferred, without any words or expression of testatrix to that effect, that it was her will.

Appeal from surrogate's court, New York county.

In the matter of the probate of a paper propounded as the last will and testament of Serena D. Turrell, deceased. Probate was refused (59 N. Y. Supp. 780), and proponents appeal. Affirmed.

The following are the surrogate's findings of fact upon the subject of execution:

(1) Serena D. Turrell, the decedent and testatrix, was an elderly woman, apparently not on cordial relations with her relatives. The will or paper writing offered for probate in this proceeding is dated the 28th day of June, 1897, and purports to have been witnessed by Lincoln Barnes and Mrs. Emma Barnes. It is in the handwriting of the testatrix, and contains a holographic attestation clause, which is subscribed by two witnesses. The alleged execution of the will took place on June 28, 1897,—less than two years before the date of the trial before me. One of the witnesses (Mrs. Emma Barnes, a seamstress of the decedent) was told by her to bring her husband with her to witness a "document." On the day named, both witnesses attended, and both the witnesses and the testatrix were then alone in the latter's hotel apartments. The paper offered for probate, being the "document" already signed, was then hurriedly produced by the decedent; room was made on the crowded table; the paper was folded so that its contents could not be seen, and was placed on the table before the witnesses; and both were told to sign at the place designated by testatrix, under the attestation clause. The signatures of the witnesses were then affixed and the witnesses immediately dismissed. (2) The

decedent did not sign such paper in the presence of the witnesses, or either of them. The decedent did not acknowledge such paper by her to have been subscribed to each of such attesting witnesses, or to either of them. (3) The decedent did not, either at the time of making such subscription, or at the time of the signing of the same by said witnesses, or on the said occasion, declare to or in the presence of the said witnesses, or either of them, that such instrument was her will; and the said decedent did not state to either of the witnesses that the said paper was her will, nor did she in any way communicate to them that it was her will, or an attempted testamentary disposition of her property.

The surrogate further found that the said paper was not executed by the decedent, or attested in the manner required by law for the execution and attestation of last wills and testaments in this state.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, Mc-LAUGHLIN, and INGRAHAM, JJ.

David McClure, for appellants.
George G. De Witt, for respondents.

BARRETT, J. The sole question here is whether the requirements of the statute as to the execution and attestation of wills were complied with. Mrs. Turrell's entire will, including the attestation clause, was holographic. The attestation clause, however, was imperfect, both grammatically and in substance. It reads as follows:

"The foregoing instrument was by Serena D. Turrell, the testatrix therein named, signed, sealed, published, and declared on the day last above written, of and for will and testament; and we, at her request, in her presence and in the presence of each other, have hereunto subscribed our names as witnesses thereto."

These grammatical inaccuracies are of no moment, but, as the will was not subscribed by the testatrix in the presence of the witnesses, the failure to attest that she made to them the alternative acknowledgment as to her subscription, which the statute authorizes, was substantial. Such a statement as that contained in this attestation clause might be honestly made by the witnesses upon outside information, or upon their own acquaintance with the testatrix's handwriting. Neither hearsay nor knowledge of handwriting, however, is sufficient; for the statute requires either that the subscription shall be made in the presence of the witnesses, or shall be acknowledged by the testator to have been so made to each of them. 2 Rev. St. (Banks & Bros.' 9th Ed.) p. 1877. Here there was no such actual acknowledgment. Mrs. Turrell pointed to the space beneath the attestation clause, and requested the witnesses, Mr. and Mrs. Barnes, to sign there. We are asked from that single fact to infer a contemporaneous acknowledgment of her then visible signature. She did not even request the witnesses to read this imperfect attestation clause, nor was her attitude suggestive of an invitation to do so. The paper was folded so as to conceal the contents of the will, and to leave nothing visible save her signature and the attestation clause. She then put her fingers upon this clause, and pointed, as already observed, to the space beneath it, where the witnesses were to sign. Mr. Barnes testified that he could not read all the words in the attestation clause,

because some of them were covered by the testatrix's fingers. He managed, however, while writing his name, to glance over it and to read part of the clause; and, while so glancing over it, he observed the words "will and testament." Even this cursory observation was, he "supposes," superinduced by curiosity. It certainly was not called forth by any desire expressed by the testatrix, or suggested by her acts or words, that he should dwell upon the clause, or inform himself of its contents. Mrs. Barnes' observation was of the same character. Indeed, she seems to have had less curiosity with regard to what she was signing, than her husband. She testified that she saw words over her signature, but paid no attention to them, as her interest was centered in putting her name where she did. She seems, however, to have read the first formal lines of the will, though when and how she was afforded that opportunity is not clearly disclosed. It is beyond dispute, therefore, that Mrs. Turrell made no independent or formal acknowledgment of her signature to the witnesses. The appellants' contention is: First, that, as the signature was visible, its acknowledgment was sufficiently established by publication; and, second, that publication was sufficiently established by the attestation clause,—in other words, that the acknowledgment of the signature was established by the mere act of pointing to the space beneath this imperfect attestation clause, and requesting the witnesses to sign there. It must be noted, in this connection, that no suspicion attaches to these witnesses. They were undoubtedly conscientious, and, so far from trying to destroy the will, they testified with apparent friendliness to the proponents, and with an evident desire to justify probate. When, therefore, these witnesses say that they have no remembrance of any word or expression on Mrs. Turrell's part indicative either of an acknowledgment of her signature, or of reference to the document as a will, it is equivalent to saying that no such word was uttered,—no such expression conveyed. These witnesses had good memories as to what really happened upon the occasion in question. They recalled the incidents, and gave many of the details. The time between the witnessing of the instrument and their examination in the surrogate's court was short,—not quite two years. They recalled well enough the use of the word "document." As willing witnesses,—which, though truthful and honest, they apparently were,—we cannot doubt that they would have recalled the essential and momentous word "will," which their surmises led them to expect, had the testatrix used that word or its substance, or in any manner conveyed it to their minds. And it would then, doubtless, have stood out in their memories more strikingly than any of the details which they so minutely recounted. The statements of these witnesses that they remembered what they testified to, and remembered nothing more, clearly amounted to saying that, beyond the incidents to which they had testified, nothing else of importance occurred, to the best of their recollection. There was therefore no direct evidence of an acknowledgment of the signature or of publication; and the only circumstances, outside of the insufficient testimony of the witnesses, from which an inference as to either statutory requirement can be drawn, are the visible signature

of the testatrix, the visible attestation clause, the holographic character of both will and attestation clause, and the request made by the testatrix to the witnesses to sign their names in the space beneath that clause.

We quite agree with the proponents that the holographic character of the will is an important consideration in their favor. It is not, however, decisive. The statute does not except even holographic wills from its requirements as to execution. It is true that the danger of fraud or mistake, which the statute was intended to provide against, is in such cases reduced to a minimum. Where the will is holographic, therefore, as was said in Re Beckett's Will, 103 N. Y. 167, 8 N. E. 506, "criticism of the terms and manner of what is claimed to have been a sufficient publication need not be so close or severe as where the question whether the testatrix knew that she was executing a will depends solely upon the fact of publication." Still, there must be some evidence tending to show that the statutory requirements were observed; and if there be neither direct evidence of the testator's acknowledgment of his signature and of publication, nor circumstances from which these can fairly be deduced, even the holographic character of the instrument will not entitle it to probate. If, then, there was here no publication, the proof of acknowledgment of the signature wholly fails. There can be no doubt, as the result of the authorities, that the actual exhibition and disclosure by the testator to the witnesses of both will and signature, accompanied with a declaration of the testamentary character of the instrument, is a sufficient acknowledgment of the signature, within the requirements of the statute. Baskin v. Baskin, 36 N. Y. 416; In re Phillips, 98 N. Y. 267; In re Mackay's Will, 110 N. Y. 611, 18 N. E. 433; In re Laudy's Will, 148 N. Y. 403, 42 N. E. 1061. The cases on this head are grouped in two classes. One is where the attestation clause alone is disclosed, the signature not being visible. Publication under these circumstances is not an acknowledgment of the signature. The other is where both will and signature are visible, so that the character of the instrument is disclosed in connection with the visible signature. There due publication is a sufficient acknowledgment of the signature. It is, however, as yet, an unsettled question in the court of last resort whether due publication suffices to establish acknowledgment of the signature where, though the latter be visible, the character of the instrument itself is physically concealed. An able surrogate (Rollins), after a careful review of all the authorities, held in Buckhout v. Fisher, 4 Dem. Sur. 277, that the production and exhibition of the will, to which the signature was appended, were essential. We need not consider the latter question, for the reason that even if publication, with the signature alone then visible, would suffice (a point upon which we reserve our judgment), there must at least be an actual and unmistakable publication, to justify the inference of a contemporaneous acknowledgment of the signature. The latter cannot be worked out from a mere inference of publication sought to be drawn from the exhibition of an imperfect attestation clause. That would be to draw one inference from another, and here it would be to draw it from an attestation clause which inaccu-

rately attests the signature, and does not purport to attest the alternative acknowledgment. But, further, it is impossible here, upon the most favorable view of the circumstances disclosed, to deduce even the primary inference of publication as required by the statute. Not a word fell from the testatrix's lips, not an intimation was given by her, that the "document," as she called it, was a will. By no act, word, or expression did she convey to the witnesses its testamentary character. Their surmise was not enough. Whatever knowledge they had was conjectural, or derived from accidental inspection, not from anything "said, done, or signified" by the testatrix; and that did not meet the statutory requirement. Wilson v. Hetterick, 2 Bradf. Sur. 430, 431. The single act of the testatrix was the previous preparation, and present presentation to the witnesses for their signature, of the imperfect attestation clause. Her single word was the request to witness the concealed "document." As already observed, she did not even ask the witnesses to read what was written above the space where they were to sign. On the contrary, she hurried them through the formality of signature, with her fingers upon the attestation clause, and with an apparent desire to finish the business speedily, and without enlightening them as to its nature. To hold, even in the case of a holograph, that acknowledgment of the testator's signature and publication of the will may be made out by his single act of presenting to the witnesses the visible signature to a concealed instrument, followed by an imperfect and inaccurate attestation clause, which latter is covered in part by his fingers, and without a word of explanation, with inconvenient surroundings, and in an atmosphere of haste,—requesting them to sign their names in a designated space beneath,—would, in effect, be to nullify the statute of wills. The case for probate is here weaker than it was in Re Cottrell, 95 N. Y. 329, where probate was sustained upon the ground that there was competent—though certainly slight—evidence to support the surrogate's conclusions of fact. The court of appeals, finding some competent evidence to support the surrogate's conclusions, deemed itself concluded thereby. Chief Judge Ruger, however, observed that "it would have been competent for the trial court in this case to have denied probate to the will in question, upon the evidence before it, and in that event we should have been bound by its decision."

Our conclusion, upon a careful review of the evidence, and upon full consideration, is that the findings of the learned surrogate were correct; that the testatrix neither signed the will in the presence of the witnesses, nor acknowledged to them that she had done so, nor did she declare it to be her will. Probate was therefore properly refused, and the decree should be affirmed, with costs. All concur.