In the Matter of the Estate of Adeline S. P. McConihe, Deceased.

Surrogate's Court, New York County, June 6, 1924.

Wills — execution — clause added below signature which neither affects disposition of estate nor names executors does not invalidate will — probate proceeding to determine which of two testamentary scripts was last will of testatrix — prior will revoked by will drawn by residuary legatee and assignee of sole next of kin subscribed under testimonium clause at end of sheet designated " page 6 "— witnesses signed on page 7 after supplemental paragraph giving instructions as to executors' commissions — will subscribed at physical and legal end pursuant to Decedent Estate Law, § 21 — valid execution — later will revokes former will — Decedent Estate Law, § 34, applied.

A clause in a will added below the signature of a testatrix which neither affects the disposition of the estate nor appoints an executor or guardian does not invalidate the will within the meaning of section 21 of the Decedent Estate Law which requires that " every will  *  *  * shall be subscribed by the testator at the end of the will  *  *  *."

Accordingly, a will is subscribed at its physical and legal end and its execution is valid where it appears, in a proceeding to determine which of two testamentary scripts was the last will and testament of the testatrix, that an instrument, duly executed in accordance with section 21 of the Decedent Estate Law, was revoked by an instrument subsequently drawn by the assignee of the sole next of kin of the testatrix who also was the residuary legatee; that the later instrument, consisting of seven pages, was subscribed by the testatrix under the testimonium clause at the bottom of the sheet designated " page 6; " that the usual attestation clause with the signatures and addresses of three subscribing witnesses appeared at the top of " page 7 " following a supplemental paragraph which gave instructions as to the compensation of the executors in case they made no further demands upon the estate, since the place where the testatrix's signature appears was the physicial end of the will and the supplemental paragraph following the signature was merely an instruction in the nature of a postscript and not a material part of the will.

Section 34 of the Decedent Estate Law requires that the paper serving to revoke a prior will must be " executed with all the formalities of a will," which includes the requirement that the subscription must be at the end. However, if the instrument of revocation is good as a will, it is good as a revocation. If invalid as a will, it is futile to revoke a prior testamentary disposition.

Proceedings for probate of will.

*McLaughlin, Russell & Sprague* (*Rufus W. Sprague, Jr.*, of counsel), for George Todd and Ethel Todd.

*Mitchell & Mitchell*, for Cornelius von E. Mitchell, one of the executors named in the will of July 13, 1923, and proponent thereof.

*Murray, Aldrich & Roberts* (*Harrison Tweed* and *Archer P. Cram*, of counsel), for the Equitable Trust Company, as executor.

*Phillips, Leibell & Fielding* (*Warren C. Fielding*, of counsel), for Mary R. Lincoln.

*Del B. Salmon* (*Henry Wynans Jessup*, of counsel), for Frances C. Zeiser, Marcella Zeiser, contestants, and Julius S. Zeiser.

*John F. Collins*, special guardian, for Emma G. Baker and Manton Martin, Jr.

*Nathan Burkan*, special guardian, for Jessie Norton, Eunice Norton and others.

FOLEY, S.  Separate proceedings were commenced in this estate for the probate of two testamentary scripts.  The first paper is dated February 9, 1922.  The second is dated July 13, 1923.  In order to make a final determination as to which was the last will and testament the proceedings were consolidated and all the issues tried before the surrogate without a jury.

In respect to the making of the paper dated February 9, 1922, I find that it was duly executed in accordance with the provisions of section 21 of the Decedent Estate Law.  It is claimed, however, by certain of the executors and legatees named in the second will that the former will was revoked, and that the later will of July 13, 1923, must be admitted to probate.  Certain questions with regard to the invalidity of the latter will have been raised herein.

(1) Is the paper invalid because it was not subscribed by the testatrix at the end of the will?

(2) Is it effective to revoke the earlier will regardless of the fact that it was not signed at the end?

Both these questions of invalidity have been raised by one Julius S. Zeiser, an executor named in the later will and the residuary legatee therein.

The testatrix, Mrs. McConihe, was a woman of advanced years. It appears that she was a woman of refinement.  Her estate was a substantial one, amounting to between $200,000 and $300,000. She left as her sole next of kin a sister.  Zeiser, the contestant, was a man under thirty years of age; he was her chauffeur for a period of five years.  He is the residuary legatee in both wills. He drew the later will (which he now contests) in his own handwriting.  The mere statement of the questions raised by him demonstrates his ingenuity in attempting to secure as much as possible of Mrs. McConihe's estate for himself.  He has agreed to pay the decedent's sister, her sole next of kin, the sum of $50,000, and has taken an assignment of all her interest in the estate.  Thereby he has purchased immunity from any possible attack by her.  The accomplishment of his design will destroy the intention of his benefactress to provide for the other legatees.

Surrogate's Court, New York County, June, 1924.      [Vol. 123

The only alleged ground of invalidity of the later will is as to its execution. No objections have been filed raising issues as to the soundness of mind of the testatrix, or the procurement of the will by fraud or undue influence. In substance the previously dated paper mentioned as objects of her bounty the same persons mentioned in the later instrument, although the legacies vary somewhat in amount. The general legacies in the later will amount to $135,000 in amount. The general legacies in the earlier will amount to $105,000. The amount of the legacies to Zeiser and his relatives under the later will is $50,000 less than under the prior will. His counsel contends, however, that the later will drawn by Zeiser is invalid because it was not subscribed at the end, but that it is valid as a revocation of the prior will; that intestacy thereby resulted, and that he is entitled, as assignee of the sole next of kin, to the whole estate.

The later will of July 13, 1923, consists of seven pages. In that will the testatrix directed that $50,000 be given to " my dearest friend, Ethel Todd," and certain jewelry; to George Todd, $50,000; to Mary L. Lincoln, $20,000; various bequests of personal property, and small bequests to other persons; the residue is bequeathed to " Julius S. Zeiser (often known as John S. Zeiser) providing however that he change his name to John S. McConihe." The instrument appoints Zeiser and two other persons as executors. Minute directions with regard to the authority and powers of the executors are set forth. On the sheet entitled " page 6 " there is an *in testimonium* clause reading: " In witness whereof I have hereunto subscribed my name and affixed my seal this 13th day of July in the year of our Lord one thousand nine hundred and twenty-three." A seal and the signature of Adeline S. P. McConihe appear at the bottom of the page immediately after this clause. On the top of " page 7 " is written the following clause: " Under the terms of this will the executors are to receive the sum of twenty-five thousand dollars, or its equivalent in bonds or stocks provided that they do not demand further compensation as Executors of this will, in such event they will receive the amount alloted by law." Then follows the usual attestation clause with the signatures and addresses of the three subscribing witnesses.

I find from the proofs that this paper was subscribed by the testatrix in the presence of each of the attesting witnesses; that the testatrix declared the instrument to be her last will and testament, and that each of the three subscribing witnesses subscribed as a witness at the end of the will at the request of the decedent. There remains for discussion the question whether the will was subscribed at the end.

Section 21 of the Decedent Estate Law requires that " .every last will and testament of real or personal property, or both, shall be executed and attested in the following manner: (1) It shall be subscribed by the testator at the end of the will, *  *  *." The testimony of the subscribing witnesses discloses that the testatrix asked Zeiser, who superintended the execution, " where she was to sign her name? " " where was the correct place to sign? " and he showed her, and that she then affixed her signature in the place indicated. Clearly that place was the physical and legal end of the will. Subscription immediately followed the *in testimonium* clause which customarily concludes a testamentary disposition. The clause which followed on the 7th page was not dispositive. The will had designated the executors. Under this provision of law (Surrogate's Court Act, § 285) the executors are entitled to their legal commissions, which approximate the amount suggested in the supplemental paragraph. This additional paragraph that followed the signature was merely an instruction in the nature of a postscript, and not a material part of the will. Under the circumstances it was not so intended by the testatrix. Both the testatrix and the draftsman, Zeiser, must have regarded it as surplusage. The strict rule of scrutiny as to the conduct of Zeiser applies forcibly to the transaction: " *Qui se scripsit haeredem,* or, whoever draws a will in his own favor, does a thing which ought to excite the suspicion of a court, and call upon it to zealously examine the evidence." Jessup's Redf. 471. The additional clause is in his own handwriting and could not have been regarded as part of the will either by himself or the testatrix. The informal nature of this paragraph is further emphasized by the language of the first phrase. " Under the terms of this will," words of explanation or instruction, rather than of absolute bequest, and plainly not intended to be part of the instrument itself.

In recent years the courts have departed from the strict and technical rule of requiring subscription at the physical end of the will, to defeat the intent of the testator. *Matter of Field,* 204 N. Y. 448; *Matter of Serveira,* 205 App. Div. 686; *Matter of Sidenberg,* 115 Misc. Rep. 38; *Matter of Gibson,* 128 App. Div. 769; *Matter of Rowe,* (Fowler, S.) 159 N. Y. Supp. 615; *Matter of Peiser,* (Fowler, S.) 79 Misc. Rep. 668. In the language of Judge Vann in *Matter of Field, supra,* 457: " The natural end of a will is where the draftsman stopped writing in the consecutive order of composition,  *  *  *. Form should not be raised above substance in order to destroy a will and the substantial thing in this case is a paper which reads straightforward and without interruption from the beginning to

21

the end and when thus read the signature is found at the end."
In *Matter of Serveira, supra*, the name of the executor was written
in a printed clause after the signature, and the court disregarded
the additional matter as immaterial and surplusage and admitted
to probate the matter preceding the signature. In *Matter of
Gibson, supra*, there was a marginal interlineation in the will which
extended below the signature of the testator, only disposing of
property in certain events in the same manner in which it would
be distributed by law. The Appellate Division (third department),
upon the opinion of Presiding Justice Walter Lloyd Smith, held that
the marginal note was not material and excluded it as part of the
last will, sustaining the validity of the remainder of the instrument.
That opinion also recites numerous authorities where the courts
have disregarded immaterial clauses following the subscription
similar in effect to the clause appearing in this will. In one case
cited (*Baker* v. *Baker*, 51 Ohio St. 217) there appeared after the
signature the clause: " My sister-in-law is not required to give bond
when probated." The court quoted Page on Wills (1901, p. 206):
" If the clause added below the signature neither affects the dis-
position of the estate nor appoints executor or guardian, the authori-
ties are unanimous that such clause does not invalidate the will,
and that within the meaning of the statute the signature is at the
end of the will." Justice Smith in the *Gibson* case says in his opin-
ion: " Courts are not looking for pretexts to destroy wills  *  *  *
such a technical construction of the statute which results in thwart-
ing a presumably just distribution of property, should not in my
judgment be upheld by the courts."

In the instrument here involved certainly the oft-repeated state-
ment that the purpose of requiring the signature at the end is to
prevent fraud can have no application. Indeed, a greater fraud
would be perpetrated if the contentions of Zeiser were sustained.
For, as draftsman of the will, he stands to profit by his own mis-
direction and misrepresentation to the testatrix as to where the
will should be signed. " Page 6 " was entirely taken up with
writing. There was no opportunity, therefore, for any new matter
to be inserted after the execution.

In my opinion all the writing  preceding the signature of the
testatrix in the paper dated July 13, 1923, has been validly
established as her last will and testament.

My conclusion renders unnecessary the discussion of the sub-
ordinate question as to whether the paper of July 13, 1923, con-
stituted a sufficient revocation of the will of February 9, 1922.
The later will contains a clause of express revocation. In passing,
however, I should observe that it is my opinion that under the

provisions of section 34 of the Decedent Estate Law, a paper which is not signed at the end cannot legally revoke a prior will. Section 34 requires that the paper must be " executed with the same formalities with which the will itself was required by law to be executed," and among these formalities is the requirement of subscription at the end. The instrument of revocation, however, if good as a will, is good as a revocation. If invalid as a will, it is futile to revoke a prior testamentary disposition.

Submit decree admitting such writing to probate. The decree should set forth the will as admitted in full.

Decreed accordingly.